# In the United States Court of Federal Claims

No. 10-810 C
Filed: February 18, 2011;
Released for Publication: March 8, 2011[1]

*************************************
                                         \*
**MISSION CRITICAL SOLUTIONS,**      \*
                                         \*
                Plaintiff,       \*
                                         \*
     v.                               \*
                                         \*
**THE UNITED STATES,**              \*
                                         \*
                Defendant.    \*
                                         \*
*************************************

*John R. Tolle*, Barton, Baker, Thomas & Tolle, LLP, McLean, VA, for Plaintiff

*Ellen M. Lynch*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Alan J. Lo Re*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; and *Karen H. Holzen*, Office of General Counsel, U.S. Small Business Administration, Washington, DC, of counsel

## OPINION AND ORDER

DAMICH, Judge:

      In this action, Plaintiff Mission Critical Solutions ("MCS") challenges its decertification by the Small Business Administration ("SBA") as a Historically Underutilized Business Zone ("HUBZone") small business concern ("SBC"). The effect of its decertification is that Plaintiff cannot compete for government contracts which require HUBZone qualification as a condition for bidding and award, including in particular Department of the Air Force Solicitation FA8773-10-R-0053, which is a 100% set-aside for HUBZone small businesses. Plaintiff seeks judgment on the Administrative Record ("AR"), declaratory relief that the SBA improperly decertified MCS as a qualified HUBZone SBC, and an injunction against the award of the Air Force

---

[1] The court issued this opinion under seal on February 18, 2011, and gave the parties to February 4, 2011, to propose the redaction of competition-sensitive, proprietary, confidential, or otherwise protected information. There were no redactions proposed and the opinion is hereby released for publication as is.

solicitation pending the restoration of MCS to the HUBZone List.[2] Defendant has filed a cross-motion for judgment on the AR.

The central question in this matter is the interpretation of SBA regulations requiring that "at least 35% of the concern's employees must reside in a HUBZone" in order to receive SBA certification as a qualified HUBZone SBC. 13 C.F.R. § 126.200(b)(4). Plaintiff avers that it had already met the requirements of initial certification and that, although its actual employee residency in a HUBZone had fallen below 35%, it was meeting the alternative, "safe harbor" requirement of "attempt[ing] to maintain" the 35% threshold, pursuant to 13 C.F.R. § 126.103, while performing on an existing HUBZone contract. Accordingly, it argues that it remained a qualified HUBZone SBC when it bid for and was awarded a different Air Force contract in December 2009 ("the December 2009 contract"). The SBA, however, reads its regulations as requiring actual 35% employee residency in a HUBZone "at the time of initial offer and at the time of award" of a new HUBZone contract, pursuant to 13 C.F.R. § 126.601(c).

For the reasons explained below, the court DENIES Plaintiff's motion for judgment on the AR and GRANTS Defendant's cross-motion.

I. Background

Plaintiff MCS is a Florida corporation with a principal place of business in Tampa. It first obtained its SBA certification as a qualified HUBZone SBC in 2000. AR 2. It is not disputed that, at the time of its initial certification, it met the requirement that 35% of its employees reside in a HUBZone. In 2005, Plaintiff was awarded a HUBZone contract by the Department of the Army at Ft. Rucker Army Base, AL, for which the period of performance was May 16, 2005, through September 30, 2008. AR 308. In 2006, Plaintiff was awarded a HUBZone contract by the Air Force for work at Mt. Home AFB, Idaho, for which the period of performance began on October 1, 2006, and extends through September 30, 2011. *Id.*

Based on a program examination conducted by the SBA for the period of December 2, 2004, through April 27, 2007, Plaintiff was re-certified as a qualified HUBZone SBC. AR 4.

The SBA again undertook an examination of MCS in 2009. *See* AR 239, 242. MCS presented a binder of information, entitled "Small Business Administration 2009 HUBZone Certification Examination," to the SBA in that inquiry. In a cover letter to the SBA, dated May 16, 2009, enclosing its binder of information, MCS wrote, "Because MCS is currently performing on a HUBZone contract, the SBA has requested evidence that our firm is making an effort to *reach* and maintain the 35% residency goal. Enclosed are many examples of how hard MCS is working to *achieve* the target number." AR 3 (emphases added). It is a fair inference from the phrasing employed by MCS that it was acknowledging it had fallen below the 35% employee residency threshold, although the Administrative Record does not reflect when this dip first occurred.

On July 8, 2009, the SBA wrote to MCS to advise that it "proposed to de-certify your concern" for lack of eligibility. The SBA found that MCS "no longer meets th[is] requirement"

---

[2] The "List" is the SBA database of qualified HUBZone SBCs that have been certified. 13 C.F.R. § 126.103. *See also* 13 C.F.R. § 126.307.

that "at least 35% of a firm's employees must reside in a HUBZone."  AR 239.  In addition, the SBA found that Plaintiff's "attempts to maintain were not substantive" because only 12 of the company's 219 – 5.5% – employees lived in a HUBZone.[3]  *Id*.

According to Plaintiff, *see* Pl.'s Mot. for J. on AR ("Pl.'s Mot.") 3, it heard nothing back from the SBA until it received, by email, a letter dated July 7, 2010, again proposing decertification for failing to comply with the 35% HUBZone residency requirement.  AR 242.  The SBA's July 7, 2010, letter referred to its site visit to MCS in March of 2009, its review of the information MCS submitted in response to the site visit, and its finding that MCS was not in compliance with the 35% residency requirement.  The letter indicated that MCS could respond with pertinent information about payroll and employee residence details.  *Id*. at 242-44.

In a letter dated August 5, 2010, MCS responded to the SBA providing certain documentation as to its ongoing HUBZone contract at Mt. Home AFB, its offices and field locations, payroll and employee information, etc.  In its letter, MCS asserted, "We believe we remain in compliance with CFR § 126.500 as we have an active HUBZone contract and can document our attempts to maintain our percentage of HUBZone employees during the performance of this contract."[4]  AR 252.  MCS further explained,

> Although the reports as supplied would suggest we are currently below our staffing goals, we have been diligent in our attempts to maintain the 35% of employees living in HUBZone areas which we believe is articulated in CFR sections § 126.200 and § 126.500, and as such has [sic] been historically interpreted by the SBA.

AR 253.

The SBA wrote again to MCS via facsimile on September 1, 2010.  AR 362.  In the letter, the SBA noted MCS's acknowledgement in May 2009, in response to the SBA March 2009 site visit, that it was not meeting the 35% residency requirement.  The SBA further noted MCS's claim that it was, however, attempting to maintain that residency threshold.  It also noted the MCS HUBZone contract for services at Mt. Home AFB, which, with the exercise of all option years, would end in 2011.  *Id*.  Aside from the Mt. Home AFB contract, the SBA expressed concern that "MCS has been awarded HUBZone contracts since the site visit was performed in March 2009, and since MCS's response indicated that at least 35% of its employees did not reside in a HUBZone."  AR 363.  One particular contract in question, Solicitation No. FA2521-09-R-0085, was issued on July 30, 2009; the response date was September 11, 2009, and the date of award to MCS was December 4, 2009.  *See id*.

---

[3]  Despite this finding by the SBA that Plaintiff's "attempts to maintain" the 35% residency threshold were not substantive, the basis for its decertification of MCS in October 2010, *see infra*, was that MCS did not meet the actual 35% requirement when it bid on and was awarded the December 2009 Air Force contract.

[4]  13 C.F.R. § 126.500 provides, "Any qualified HUBZone SBC seeking to remain on the List must recertify every three years to SBA that it remains a qualified HUBZone SBC (See § 126.501 for ongoing obligations."  The recertification must be in writing and "must represent that the circumstances relative to eligibility that existed on the date of certification showing on the List have not materially changed . . . ."

The SBA explained its position: if a "qualified HUBZone SBC submits an initial offer for another HUBZone contract and is ultimately awarded the contract, it must meet all of the HUBZone program's requirements at the time of submission of its initial offer and at the time of award, including the 35% residency requirement." *Id*. n.1 (emphasis in original). Accordingly, the SBA requested documentation that MCS met the 35% residency requirement both when it submitted its offer for and when it was awarded the December 2009 contract. AR 364.

MCS responded on September 30, 2010. AR 368-73. It explained that it did not need to meet the actual 35% residency requirement when it bid for and was awarded the December 2009 contract because it was, instead, complying with alternative, "safe harbor" regulations in its "attempt to maintain" residency targets during its ongoing Mt. Home AFB contract. "[T]he eligibility requirements for a qualified HUBZone SBC with an existing HUBZone contract are different than those for firms who are going through the HUBZone application process." AR 371. Accordingly, it took the position that the residency documentation requested by the SBA was not relevant to an investigation of whether MCS was eligible for award of the December 2009 contract. AR 372. The relevant inquiry, rather, for which it said the agency already had the appropriate documentation, was only whether MCS met the "attempt to maintain" criteria. *Id*. In conclusion, MCS offered, "If there is some additional information that you still need from MCS after the review of the response, MCS is happy to comply." AR 373.

On October 29, 2010, the SBA notified MCS that it had been de-certified and removed from the list of qualified HUBZone SBCs because it "does not meet and has not met the requirement that at least 35% of its employees reside in a HUBZone." AR 408. It explained that the "attempt to maintain" requirements only act as a safe harbor with respect to an existing contract. Once awarded a HUBZone contract, a qualified HUBZone SBC must "attempt to maintain" the 35% residency requirement "during the performance of *that* HUBZone contract." AR 410 (emphasis added). "While a firm may 'attempt to maintain' the 35% HUBZone residency requirement while performing on a contract, it must meet the requirement at the time of offer and award for any *new* HUBZone contract." *Id*. (emphasis added).

Plaintiff filed its protest in this court on November 22, 2010. In a telephonic status conference held on November 24, 2010, the Government advised the court that the closing date for offers for the 2010 Air Force contract would be held in abeyance pending the resolution of this protest. The court denied as moot Plaintiff's motion for a preliminary injunction. Briefing on the parties' cross-motions for Judgment on the Administrative Record concluded on January 10, 2011.

II.   Jurisdiction and Standard of Review

The Court of Federal Claims has jurisdiction under the Tucker Act "to render judgment on an action by an interested party objecting . . . to an alleged violation of a statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Here, Plaintiff's complaint sufficiently alleges that its decertification as a qualified HUBZone SBC impairs its ability to seek the contract award in Air Force Solicitation FA8773-10-R-0053. There is no dispute among the parties about the court's jurisdiction in this matter and the court finds that jurisdiction is satisfactorily demonstrated.

In reviewing an agency's decision in a bid protest, the court applies "the standards set forth in section 706 of title 5" of the Administrative Procedure Act (APA) (5 U.S.C. §§ 551-559, 701-706). 28 U.S.C. § 1491(b)(4). Under the APA, the inquiry is whether the agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law" or "without observance of procedure required by law." 5 U.S.C. § 706(2). The Federal Circuit has described the standard of review as whether the procurement decision "lacked a rational basis" or "involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); see also *Med. Devel. Int'l, Inc. v. United States*, 89 Fed. Cl. 691, 700 (2009). Where, as here, the protestor asserts a violation of regulation or procedure, "the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations." *Garufi*, 238 F.3d at 1333.

The court's review is "highly deferential" to the decision of the agency. *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). For example, "[i]f the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). As a general rule, the court defers "even more broadly to an agency's interpretations of its own regulations than to its interpretation of statutes, because the agency, as the promulgator of the regulation, is particularly suited to speak to its original intent in adopting the regulation." *Gose v. United States Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006). The agency's interpretation does not, of its own weight, control the outcome of the inquiry if it is "'plainly erroneous or inconsistent with' the regulations being interpreted." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal citations omitted). Even so, if the agency's interpretation is reasonable or where "the relevant sources of law are ambiguous regarding the issue presented in this protest, the court must defer to the SBA's interpretation, so long as it is not inconsistent with the regulation, or plainly erroneous." *Aeolus Systems, LLC v. United States*, 79 Fed. Cl. 1, 10 (2007) (finding SBA implementing regulations silent on question whether workers receiving deferred compensation are employees for purposes of HUBZone program).

Pursuant to Rule 52.1(b) of the Rules of the Court of Federal Claims (RCFC), the court considers the parties' cross-motions for judgment on the administrative record as "akin to an expedited trial on the paper record." *L-3 Global Communications Solutions, Inc. v. United States*, 82 Fed. Cl. 604, 608 (2008). The court inquires whether a party has met its burden of proof, and makes fact determinations as necessary, based on the existing administrative record. *Id*. at 607-608; *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).

III.    Discussion

The Historically Underutilized Business Zone ("HUBZone") program, codified in the Small Business Act at 15 U.S.C. § 657a, is one of the exceptions to the general rule of full and open competition for government contracts. *See Blue Dot Energy Company, Inc. v. United States,* 179 Fed. Appx. 40, 41-42 (Fed. Cir. 2006) (unpublished). It allows federal agencies, in cooperation with the Small Business Administration, to establish small business set-asides "to aid small businesses located in economically disadvantaged or distressed areas." *Id*. at 42; *see*

5

*also Metro Machine Corp. v. United States Small Bus. Admin.*, 305 F.Supp2d 614, 616 (E.D. Va. 2004).

As the court in *Aeolus* noted,

> [T]he SBA is charged with administering the HUBZone program. Indeed, "Congress has unambiguously delegated to the SBA Administrator the task of determining a contractor's qualified HUBZone status." . . . After a company is certified by the SBA, and its name appears on the SBA's list of qualified HUBZone concerns, the company is eligible for program preferences, including HUBZone set-asides, HUBZone sole source awards, and HUBZone price evaluation preferences.

*Aeolus*, 79 Fed. Cl. at 7 (internal citations omitted).

The SBA promulgated regulations in 1998 governing the administration of the HUBZone program. *See* 13 C.F.R. § 126.100 through § 126.900. The requirements for certification as a qualified HUBZone SBC are set out in 13 C.F.R. § 126.200, entitled "What requirements must a concern meet to receive SBA certification as a qualified HUBZone SBC?" For a non-agricultural, non-Indian Tribal Government entity such as MCS, there are six requirements. These requirements involve standards relating to: 1) percentage of ownership and control by United States citizens, 2) size as a small business, 3) location of the principal office of the concern within the HUBZone, 4) percentage of the concern's employees residing with the HUBZone, 5) attempting to maintain that percentage during the performance of any HUBZone contract, and 6) certain subcontracting performance obligations. 13 C.F.R. § 126.200(b).

Regarding employee residency, this regulation specifies: "(4) Employees. At least 35% of the concern's employees must reside in a HUBZone . . ." 13 C.F.R. § 126.200(b)(4). Section 126.200(b) further provides, "(5) Contract Performance. The concern must represent, as provided in the application, that it will 'attempt to maintain' (see § 126.103) having 35% of its employees reside in a HUBZone during the performance of any HUBZone contract it receives." 13 C.F.R. § 126.200(b)(5).

"Attempt to maintain" is explained in the "definitions" section of the HUBZone regulations. "Attempt to maintain means making substantive and documented efforts such as written offers of employment, published advertisements seeking employees, and attendance at job fairs." 13 C.F.R. § 126.103.

It is clear from the record that Plaintiff did receive certification from the SBA as a "qualified HUBZone SBC," that it was maintained on the SBA's List of qualified HUBZone SBCs through 2009 and until it was decertified in October 2010, but that it had fallen short of the 35% employee residency requirement at some time prior to the time of its initial offer for and the time of its award of Air Force Solicitation No. FA2521-09-R-0085 in 2009.

The Administrative Record also reflects doubt within the SBA with respect to Plaintiff's "attempt to maintain" efforts. In its first proposed decertification letter, in July 2009, the SBA

6

flatly stated its finding that MCS's "attempts to maintain" were "not substantive," although inexplicably it took no action at that time. AR 239. In an email on July 21, 2010, from Leo Sanchez, an SBA HUBZone Office area director, to program Melissa Bryner, he stated,

> I believe the firm is playing games with us . . . When the first proposed decertification letter was sent, the firm . . . argued that since they had been awarded a HUBZone contract, that the "attempt to maintain" clause should apply to them . . . if we were going to allow the attempt to maintain clause to apply, we were going to need to obtain payroll information from . . . 10 years back. The attempt to maintain clause does not indicate for how long a firm may be able to make the claim.

AR 245.

Rather than base its proposed decertification on a failure to "attempt to maintain," Mr. Sanchez urged decertification on existing grounds:

> I think the basis of the decertification . . . may be that it appears the firm was bidding on HUBZone contracts when it should not have been because likely it was not in compliance with the 35% residency requirement. I think we should have enough in the file to decertify the firm now.

*Id*.

The Administrative Record reflects, nevertheless, that Plaintiff did certify to the contracting officer for the December 2009 Air Force Solicitation, pursuant to 13 C.F.R. § 126.601, that it was attempting to maintain the 35% residency requirement. AR 369. It based this representation on its "attempt to maintain" efforts during the ongoing performance of the Mt. Home AFB contract. AR 368. Neither in the Administrative Record nor in its motion for judgment on the record does the Government contest Plaintiff's representation in this respect.

The Government argues in essence, however, that Plaintiff's "attempt to maintain" efforts on the Mt. Home AFB contract are irrelevant. It avers that "the safe harbor provided by the 'attempt to maintain' language in the HUBZone regulations applies only during the performance of a contract, and a firm must meet all the regulations of the HUBZone program – including the 35 percent residency requirement – at the time of offer and award of any *new* HUBZone contracts." Def.'s Opp'n to Pl.'s Mot. for J. on AR and Def.'s Cross-Mot. for J. upon AR 11 ("Def.'s Cross-Mot.") (emphasis added). The SBA's interpretation is laid out more specifically in its decertification letter to MCS:

> [W]hen enacting the HUBZone program, Congress was well aware that small businesses must hire employees to perform on specific contracts. Because the hiring of additional employees for a specific HUBZone contract could impact the businesses' ability to meet the 35% HUBZone residency requirement, the HUBZone

7

>small business is required, by statute, to "attempt to maintain" that
>requirement during the performance of *that* HUBZone contract.

AR 410 (emphasis added).

In other words, the Government's position is that the "attempt to maintain" safe harbor only serves to preserve the status of a qualified HUBZone SBC when its employee residency percentage falls below the 35% threshold during the performance of a particular contract, but only as to that contract and not as to new contracts.

As the Government notes, the pertinent regulatory references to "attempt to maintain" tie that phrase to the context of a "qualified HUBZone SBC."

For example, under the "Subpart" heading of "Requirement to Be a Qualified HUBzone Sbc," § 126.200(b)(5) provides, "The concern must represent, as provided in the application, that it will 'attempt to maintain' (see § 126.103) having 35% of its employees in a HUBZone during the performance of any HUBZone contract it receives." *Id*. Pursuant to § 126.601, entitled "What additional requirements must a qualified HUBZone SBC meet to bid on a contract?," the SBC must certify to the contracting officer of the soliciting agency that, inter alia, "If the qualified HUBZone SBC was certified pursuant to § 126.200(b), it must represent that it will 'attempt to maintain' (See § 126.103) the required percentage of employees who are HUBZone residents during the performance of a HUBZone contract." § 126.601(d)(4). § 126.602, entitled "Must a qualified HUBZone SBC maintain the employee residency percentage during contract performance?," provides, "Qualified HUBZone SBCs eligible for the program pursuant to § 126.200(b) must 'attempt to maintain' (See § 126.103) the required percentage of employees who reside in a HUBZone during the performance of any contract awarded to the concern on the basis of its HUBZone status." *Id*.

In its decertification letter to MCS, the SBA acknowledged that "once awarded a HUBZone contract, a qualified HUBZone SBC must 'attempt to maintain' the 35% HUBZone residency requirement," citing § 126.602. AR 409. It then advised that, "if that same qualified HUBZone SBC submits an offer for another HUBZone contract and is ultimately awarded the contract, it must meet all of the HUBZone program's requirements at the time of submission of its initial offer and at the time of award, including the 35% HUBZone residency requirement," citing § 126.601(b).[5] AR 410. That section provides plainly that, "a firm must be a qualified HUBZone SBC both at the time of its initial offer and at the time of award in order to be eligible for a HUBZone contract." Because MCS did not demonstrate that it met the 35% threshold, the SBA concluded that it had failed "to demonstrate that [it] was eligible for the HUBZone contracts that it has received." AR 411.

The SBA's conclusion that MCS was not "a qualified HUBZone SBC" when it bid for and was awarded the December 2009 Air Force contract, of course, begs the question of what constitutes a "qualified HUBZone SBC." § 126.103 defines "Qualified HUBZone SBC" as "a HUBZone SBC that SBA certifies as qualified for federal contracting assistance under the HUBZone program." In turn, in order to obtain certification, an entity must meet the

---

[5] § 126.601(b), however, was redesignated as § 126.601(c) as of September 14, 2009. *See* 74 FR 46887. The court will otherwise refer, as do the parties' briefs, to the latter designation.

requirements of § 126.200, "What requirements must a concern meet to receive SBA certification as a qualified HUBZone SBC?," which follows the heading, "Subpart B. Requirements to *Be* a Qualified Hubzone Sbc [sic]." (emphasis added).

The fourth requirement under § 126.200(b) (applicable to non-Indian Tribal Government/non-agricultural concerns such as MCS) is that "[a]t least 35% of the concern's employees must reside in a HUBZone." § 126.200(b)(4).

Plaintiff dismisses § 126.200(b) as applicable only to initial certification. "[T]he SBA applied the wrong standard. The SBA applied the standard that applies when a concern is first trying to be certified . . ." Pl.'s Mot. 1. According to Plaintiff, once certified, the concern remains a qualified HUBZone SBC so long as it is both performing on a HUBZone contract, even if it falls below the 35% threshold, and meeting the terms of the "attempt to maintain" safe harbor. "Once a concern is determined to be a qualified HUBZone SBC there are certain requirements it must meet to *remain* a qualified HUBZone SBC." *Id*. at 13 (emphasis added). As such, it would then still be a "qualified HUBZone SBC" if it bid on a new or additional contract.

Accordingly, Plaintiff argues in response to the Government that, when it bid for and was awarded the December 2009 contract, it was in fact certified as a qualified HUBZone SBC pursuant to § 126.200(b), it had certified to the contracting officer that it was on the SBA List, AR 369, and it was "attempt[ing] to maintain" the 35% employee residency threshold while continuing to perform on the Mt. Home AFB contract. Thus, it avers that it met all the terms of § 126.601, "What additional requirements must a qualified HUBZone SBC meet to bid on a contract?"

The court finds, however, that Plaintiff's neat division of the regulations into one category applicable to concerns seeking certification in the first place, such as § 126.200(b), and an alternative category applicable to "remaining" qualified, such as §§ 126.601 and 602, is not so clear cut. § 126.601 prescribes requirements *in addition to* being a "qualified HUBZone SBC," not in lieu of the requirements to become certified as qualified pursuant to § 126.200(b). One of the additional requirements therein is that the firm "must be a qualified HUBZone SBC both at the time of its initial offer and at the time of award to be eligible for a HUBZone contract." § 126.601(c). § 126.602, "Must a qualified HUBZone SBC maintain the employee residency percentage during contract performance?," requires that "qualified HUBZone SBCs eligible for the program pursuant to § 126.200(b) must 'attempt to maintain'" the residency threshold during the performance of any contract awarded on the basis of its HUBZone status. The "attempt to maintain" requirement specified in § 126.602, however, is an additional obligation, not a definitional change in what constitutes a qualified HUBZone SBC. Thus, the court finds no support for Plaintiff's argument that the 35% residency requirement in § 126.200(b)(4) is abrogated for purposes of new or additional contracts by operation of the "attempt to maintain" references in §§ 126.601 and 602. By contrast, the references to "contract performance" in § 126.200(b)(5) and to "performance of any contract" in § 126.602 provide the explicit authority for a HUBZone SBC that is qualified under § 126.200(b) to continue performance on a *existing* HUBZone contract even though its employee percentage falls below the threshold. Thus, the court concludes that, except for performance during an existing contract, the 35% residency requirement is a continuing requirement. The court further notes that, even if the residency

9

requirement were not so clear as the court finds it, it is at best ambiguous; as such, under *Gose*, 451 F.3d at 836, the court must defer to the agency's interpretation of its own regulations unless plainly erroneous.

Furthermore, the Government argues that "SBA's interpretation of the regulations at issue here – the 35 percent residency requirement and the 'attempt to maintain' safe harbor provisions – is clearly reasonable when the regulations are viewed in their entirety." Def.'s Cross-Mot. 11. It notes that Congress's "clear intent behind the HUBZone program was to revitalize economically distressed areas. Such revitalization, as Congress recognized, requires that government contracts be given to businesses that employ people who live in the HUBZone areas." *Id*. at 13. Allowing the "attempt to maintain" safe harbor to operate potentially indefinitely would clearly undermine Congressional intent and frustrate the purpose of the HUBZone program. *Id*.

Accordingly, it argues, "SBA's determination that Mission Critical did not meet the 35 percent residency requirement required for HUBZone status is entitled to substantial deference because that determination represents SBA's reasonable interpretation of its own regulations administering the HUBZone program." *Id*. at 14. The court concurs that the SBA's interpretation limiting the reach of the safe harbor, "attempt to maintain" regulations to existing contracts aligns the HUBZone program with the evident desire of Congress to utilize the program to increase employment in the HUBZone areas.

Therefore, the court finds that the 35% residency threshold is a requirement for a qualified HUBZone SBC to obtain new or additional HUBZone contracts, that MCS did not meet the employee residency requirement at the time of offer and at the time of award of the December 2009 contract, and that the SBA's decertification of MCS was reasonable and justified.

IV. Conclusion

Accordingly, the court hereby DENIES Plaintiff's motion for judgment on the Administrative record and GRANTS Defendant's cross-motion.

The Clerk of Court is directed to enter judgment for Defendant.

                                        s/ Edward J. Damich
                                        EDWARD J. DAMICH
                                        Judge